BEFORE THE U.S. DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
True Division for Trial: Columbia                    **No. 3:22-cv-608-CMC**

Richard Alexander Murdaugh, Plaintiff v. D. Shane Kitchens, Defendant
**Marie Assa'ad-Faltas, MD, MPH, *pro se* Proposed Intervenor.**

**Dr. Assa'ad-Faltas' Motion to Sever due to this Court's Text ORDER Recoding the case**

**No 22-cv-_____-CMC**

| | |
|---|---|
| Marie Assa'ad-Faltas, MD, MPH, | Plaintiff and *habeas* Petitioner, |
| v. John W. Kittredge, *solely* officially as Acting SC Chief Justice in SC Appellate Case 2021-000815, and *solely* for declaratory and injunctive relief, | Defendant and *habeas* Respondent. |

**Complaint, Petition, and Application for Declaratory and Injunctive Relief per *Steffel v. Thompson*, 415 US 452 (1974); *Wooley v. Maynard*, 430 US 705 (1977); and *District of Columbia Court of Appeals v. Feldman*, 460 US 462 (1983).**

## Jurisdiction and Venue

1. This Court has Jurisdiction under 28 U.S.C. §1983 (read in *Feldman* to give U.S. district courts jurisdiction over *administrative* acts of state's highest court) and 28 U.S.C. §2254. Defendant/Respondent is, **without jurisdiction,** holding Plaintiff/Petitioner in *custody-in-effect* **in Columbia, South Carolina ("SC")**, to answer improper contempt charges.

2. Marie Assa'ad-Faltas, MD, MPH ("Dr. Assa'ad-Faltas" or "Dr. Faltas") is a Coptic Orthodox Christian physician, surgeon, and Master of Public Health, lawfully admitted for permanent residence since 2005 and domiciled in South Carolina since January 1992. Defendant is of different religion, ethnicity and nationality.

3. ***Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), *unanimously* held Middle Easterners and other "ethnically identifiable subgroups of *homo sapiens*," while now classified as white, protected by §§1981 and 1983:**

    > Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended §1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. [footnote 1:] We note that under prior cases, discrimination by States on the basis of ancestry violates the Equal Protection Clause of the Fourteenth Amendment. **Hernandez v. Texas, 347 U. S. 475, 479 (1954); Oyama v. California, 332 U. S. 633, 646 (1948); Hirabayashi v. United States, 320 U. S. 81, 100 (1943).** See also **Hurd v. Hodge, 334 U. S. 24, 32 (1948).**

## Legal and Historical Facts and Procedural History

4. SC Code of Laws (1976 as amended to the present) provides *inter alia*:

    **SECTION 14-1-100. Rights in court shall not be affected by race or color.** Whenever authority has heretofore been conferred by law upon any free white person or persons to institute any suit or proceedings or to prefer any information or complaint in any matter, civil, penal or criminal, the same rights shall be enjoyed by and the same remedies shall be applicable to all persons whatsoever, regardless of race or color, **subject to the same conditions and none other.**

    **SECTION 40-5-80. Citizen may prosecute or defend own cause.** This chapter may not be construed so as to prevent a citizen from prosecuting or defending his own cause, if he so desires.
    HISTORY: 1962 Code Section 56-102; 1952 Code Section 56-102; 1942 Code Section 326; 1932 Code Section 326; Civ. P. '22 Section 282; Civ. C. '12 Section 3922; Civ. C. '02 Section 2819; G. S. 2167; R. S. 2295; 1721 (7) 173; 1868 (14) 97; 2002 Act No. 307, Section 2

5. Article V of SC's Constitution vests the judicial power of the state in a unified court system and gives SC's Supreme Court ("SC S Ct") **only such power over SC's circuit court as necessary to correct errors of law *after they occur* in a case or controversy**. SC S Ct has no *ex ante* judicial power over SC's circuit court. SC S Ct's rule-making authority is limited by SC's general laws, including the above two sections, and conditioned on submission of any new or amended rule(s) to both houses of SC's General Assembly.

**page 1 of 4**, exclusive of any exhibits, appendices, and incorporation by reference of all matter available for judicial notice

6. On 2 December 2009, Dr. Assa'ad-Faltas was falsely arrested at the direction of one Sara Heather Savitz Weiss ("Weiss"), then assistant solicitor ("AS") in SC's 5th judicial district ("AS5JD"), on two first-degree harassment charges which AS5JD Weiss knew to be false but brought mainly for Dr. Assa'ad-Faltas' opponents in one state civil action, 2009-CP-40-02219, to gain unfair advantage.

7. Dr. Assa'ad-Faltas' opponents in 2009-CP-40-02219 included the City of Columbia, SC ("*the* City") which has been supplementing Weiss' salary as AS5JD with $70K/year, and one Sharon Bonner Koon, later-discovered to have been a long-time friend of U.S. Judge Wooten's second wife.

8. Weiss is the daughter of Stephen Savitz ("Savitz"), lead partner of the Columbia, SC, law firm now or previously employing U.S. Magistrate Judge Shiva Vafai Hodges' husband or brother. Savitz also contributed substantially to SC Attorney General ("SCAG") Wilson's election campaign(s).

9. Dr. Assa'ad-Faltas defended herself ably *pro se* against the one harassment charge Weiss called for trial on 22-26 February 2010. SC Circuit Judge Clifton Newman presided and complimented Dr. Assa'ad-Faltas *on the transcribed record* as "most pleasant and gracious [but] not frivolous at all [or] in any way offend[ing]"). Thank God, the jury refused to convict Dr. Assa'ad-Faltas; but Judge Newman declared a mistrial instead of revisiting Dr. Assa'ad-Faltas' motions to dismiss.

10. Knowing the lack of *true* evidence against Dr. Assa'ad-Faltas and the latter's immediate post-trial research into the surprise falsehoods presented at trial, Weiss used her connections and the disfunction of SC's criminal "justice" system to start a war against Dr. Assa'ad-Faltas which lasted until she, thank God, again ably *pro se* got the harassment charges **dismissed *with* prejudice** on 13 August 2012. Weiss' war against Dr. Assa'ad-Faltas included impugning her mental competence, holding *ex parte* "interviews" with judges and making them sign a bizarre *ultra vires* order limiting Dr. Assa'ad-Faltas' access to the Richland County Circuit Court courthouse, and conspiring to deny Dr. Assa'ad-Faltas' basic human right to speak for herself and defend herself *pro se*.

11. SC's system's disfunction is aggravated by the personality of Jean Toal ("Toal"), who, despite her talents and energy, *totally ignored* necessary insulation of SC's trial judges from appellate judges. Toal instead boasted of personal relationships with all SC trial judges and acted as if the highest judicial virtue were the exchange of favors to and among Toal's friends, relatives, and prot g s.

12. On 8 April 2011, to clear Dr. Assa'ad-Faltas' *pro se* advocacy out of Weiss' way and send business to Toal's "old friend" Orin Briggs, Toal forbade SC's state courts' clerks from accepting *anything* for *pro se* filing from Dr. Assa'ad-Faltas though no case or controversy was extant between them and her. Toal never submitted that order to SC's General Assembly; so, it was neither judicial nor administrative but was enforced through collusion of SC's so-called law-enforcement officers.

13. The invalid restrictions in Cooper-and-Barber's 31 March 2010 and Toal's 8 April 2011 ORDERS were still poorly drafted enough to inadvertently leave a *pro se* Dr. Assa'ad-Faltas room to *succeed after 30 months* in getting the two first-degree harassment charges called again for trial and thereupon dismissed. Toal then retaliated with her 24 October 2012 ORDER which, again, neither arose from or under any case or controversy nor was submitted to SC's General Assembly.

14. On 7 November 2013, SC S Ct *effectively* repealed the 8 April 2011 and 24 October 2012 ORDERS; and the 31 March 2010 ORDER was rescinded by SC Circuit Judge Lee on 23 June 2016.

15. On 27 September 2017, Defedant/Respondent and two SC associate justices issued an ORDER without underlying case or controversy and without submission to SC's General Assembly to restrict Dr. Assa'ad-Faltas' contact with various employees of SC's state court system. That ORDER is so ambiguous that ten SC Circuit judges read it differently at different times and SC S Ct itself later accepted in its original jurisdiction from SCAG Wilson a different application to clarify it.

16. On 31December 2021, thank God, finality was achieved in the PCR case Dr. Assa'ad-Faltas had

page 2 of 4, exclusive of any exhibits, appendices, and incorporation by reference of all matter available for judicial notice

tried *pro se* and won *twice, https://ctrack.sccourts.org/public/caseView.do?csIID=69765*

17. On 24 January 2022, Defendant/Respondent initiated a criminal case against Dr. Assa'ad-Faltas for having *allegedly*, over 22 months during the Pandemic closure of court buildings, either called or e-mailed various SC public employees about her pending cases at a rate of once per month.

18. As evident in pp 33-87 of ECF 25-1 in 3:92-cv-02786-JFA (DSC), *all* the contacts resulted from SC S Ct or SC Court of Appeals ("CoA") *clerical* personnel delaying, concealing, mis-titling, and/or mis-directing, papers Dr. Assa'ad-Faltas filed *pro se* in her own cases or papers SC S Ct or SC CoA should have sent in response to actions in Dr. Assa'ad-Faltas' own cases. **These clerical employees' jobs include responding to *exactly* the kinds of questions Dr. Assa'ad-Faltas asked. And no call by Dr. Assa'ad-Faltas was *even allegedly* loud, unduly lengthy, or rude.**

19. Dr. Assa'ad-Faltas promptly responded with motions copied at pp 14-24 of ECF 25-1 in 3:92-cv-02786-JFA (DSC) **but SC S Ct's response remains *basically*** "the underlying orders allegedly violated are valid *because we issued them* and any challenge to them is frivolous."

20. SC S Ct still defies *this Court's* and the U.S. Court of Appeals for the Fourth Circuit's reversals of *SC S Ct* itself in *Brandt* v. *Ozmint,* 664 F. Supp. 2d 626 (DSC 2009), No. 6:06-01938-HFF-WMC., affirmed *sub nom* **Brandt v. Gooding 636 F.3d 124 (4th Cir 2011)**. *Specifically,* SC S Ct insists on being the judge of the validity of its own issuances and of dispensing with any *mens rea* requirement for conviction.

21. SC S Ct unreasonably defied *Young* v. *Vuitton,* 481 U.S. 787 (1987), and appointed SCAG Deputy Zelenka, an interested prosecutor offered by SCAG, *and left him **no discretion to decline** to prosecute.*

22. Deputy SCAG Donald J. Zelenka is Weiss' supervisor. Dr. Assa'ad-Faltas documented the 378 perjuries, forgeries and fabrications Weiss committed on 23-25 February 2010 alone and emailed them to Zelenka, who responded that he will not look at them. Zelenka vigorously pursued Brandt for one forgery but is refusing to even investigate the 378 perjuries allegedly suborned by Weiss.

23. Zelenka's and SC S Ct's protestations of protecting "the dignity" of SC's courts from Dr. Assa'ad-Faltas' once-per-month call or email ring worse than hollow: they are hypocrisy glorified as nothing could be more insulting to the courts or obstructive of justice than subornation of perjury.

24. Were SC S Ct to convict Dr. Assa'ad-Faltas, *habeas* would be granted under *Brandt, supra*. **As the expected incarceration is too short to allow completion of a *habeas* case before expiration of the expected six-month sentence, this case is ripe now and under *Wooley, supra*.**

25. Dr. Assa'ad-Faltas suffers irreparable injury because (1) SC S Ct's orders discriminatorily shut her out of SC's courts, **and** (2) SC S Ct's denial of the comforts of inquiring by phone and filing by email, *which are afforded to **all** similarly-situated others, frivolous or not, have already caused PHYSICAL DAMAGE to Dr. Assa'ad-Faltas' left leg* through forced ambulation.

26. Contrary to the opening, unfounded, branding of Dr. Assa'ad-Faltas as "a prolific frivolous filer," **it is SC S Ct,** not Dr. Assa'ad-Faltas, **which initiated SC Appellate Case 2021-000815** *and kept hounding Dr. Assa'ad-Faltas at her own home with seven visits so far by SC's Bureau of Protective Services* with papers SC S Ct could have emailed to Dr. Assa'ad-Faltas instead.

27. Even when Dr. Assa'ad-Faltas treated this "If Respondent fails to provide one of these responses, this Court may find that Respondent has waived any right to be represented by counsel in this matter" from SC S Ct as an *escape clause*, **not mere surplusage**, SC S Ct responded with a false accusation that she "refuses to acknowledge this Court's request that she inform the Court that she understands the dangers and disadvantages of proceeding without counsel" in the 15 February 2022 ORDER which set the *Faretta* hearing, which in turn caused Dr. Assa'ad-Faltas to ambulate on a re-fractured knee instead of immobilizing it.

28. For the *Faretta* hearing, Dr. Assa'ad-Faltas had to disclose her medication history and her efforts against depression. **SC S Ct conditioned any further accommodation of her physical disabilities**

on her surrender of her rights to privacy of her relationship with her "treating physician(s)." In the U.S., where a million unborn lives are taken every year under pretext of pregnant women's privacy with their doctors, SC S Ct should accept from an almost 69-year-old Dr. Assa'ad-Faltas, herself a physician, her own statement of physical need for accommodation. That alone satisfies the irreparable injury requirement of *Wooley, supra*. **Dr. Assa'ad-Faltas also risks being held *in direct* contempt if she tries to offer for the record her valid defenses of invalidity of the orders, necessity, lack of culpable intent, ambiguity of the orders, lack of a neutral entity in the probable cause determination, and/or any other defense which Dr. Assa'ad-Faltas forfeits by not presenting at trial.**

29. SC S Ct also insists on structural errors by denying trial by jury in a state where even the pettiest offenses in SC's summary courts' jurisdiction are triable by jury and in denying a public trial by not putting the case on C-track and by denying live-streaming which is routine for SC S Ct events.

30. SC S Ct also *effectively* denied and continues to deny Dr. Assa'ad-Faltas' access to monitoring by her consular officer by refusing to put the case on C-track or allowing it to be live-streamed. A consular officer who tends to the needs of thousands of Egyptian expats in the South cannot be expected to travel at SC S Ct's whims. **The touchstone of due process is *meaningfulness*.**

## PRAYERS FOR DECLARATIONS

31. No contempt arises from violation of an *administrative* order as the inherent power of contempt is only in aid of the *judicial* power of the courts which, in turn, *is limited to cases or controversies*.

32. When the state legislature allows trial by jury for petty offenses, even those not punishable by incarceration, indirect contempt defendants have an inalienable right to trial by jury.

33. Public criminal trial includes all documents of the case being made public subject to redaction.

34. SCAG is interested in SC Appellate Case 2021-000815 due his involvement in Dr. Assa'ad-Faltas' other cases where SCAG sought to limit Dr. Assa'ad-Faltas' rights to *pro se* advocacy.

35. Meaningful access to consular officer includes provision for remote monitoring by busy consuls.

36. The validity of the underlying order alleged to be violated cannot be judged by the entity that issued it but must be judged by a higher court, or, if not available, by a *different* coordinate court.

37. An order denying *physical* access to court services is void as contrary to public policy.

38. SC S Ct's 27 September 2007 ORDER naming Dr. Assa'ad-Faltas as Respondent is void as it neither arose from an extant case or controversy nor was submitted to SC's General Assembly.

39. Same order is not a criminal statute and does not serve any state law-and-order function, and is thus owed no deference by federal courts. All penalties for frivolous filings are enumerated in SC's Frivolous Claims Act and Rule 11; and SC S Ct has no jurisdiction to legislate more penalties.

## PRAYERS FOR INJUNCTIONS

40. The 22 March 2022 trial is prayed to be enjoined until the above issues are decided; and any contempt trial is prayed to be held by remote technology with this Court and Egypt's Consul monitoring it.

## VERIFICATION

41. All factual matter in this document is declared under penalty of perjury to be true to Dr. Assa'ad-Faltas' personal knowledge and clear recollections but for human error which is minimized by effort.

Respectfully submitted on 21 March 2022 **and served the same day** by e-mail to Messers. Harpootlian, Griffin, Lindemann, Zelenka, Waters, and Salter, with copies to relevant others, all God so willing.

[S/] **Marie Assa'ad-Faltas, MD, MPH, Petitioner/Plaintiff/Movant *pro se***
P.O. Box 9115, Columbia, SC 29290
Phone: (803) 783-4536     Cell: (330) 232 – 4164
e-mail: Marie_Faltas@hotmail.com and MarieAssaadFaltas@GMail.com